IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

IGOR ELMAN, M.D.,                    :

       Plaintiff,

                        Case No. 3:18-cv-00358

       v.                           :

WRIGHT STATE UNIVERSITY,                JUDGE WALTER H. RICE

       Defendant.                  :

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR
SANCTIONS (DOC.#52) PURSUANT TO FED. R. CIV. P. 37(e)(1) AND
AWARDING SANCTIONS AS FOLLOWS: (1) DEFENDANT IS PRECLUDED
FROM SUBMITTING ANY EVIDENCE, EITHER THROUGH TESTIMONY OR
DOCUMENTS, AS A REASON FOR THE REMOVAL OF PLAINTIFF AS
CHAIR OF THE DEPARTMENT OF PSYCHIATRY, THAT RELATES, REFERS
OR PERTAINS TO HIS ALLEGED FAILURE TO COMMUNICATE OR WORK
EFFECTIVELY WITH LEARNERS, OR THAT THE LEARNERS ACTIVELY
AVOIDED CONTACT WITH PLAINTIFF; AND (2) DEFENDANT IS TO PAY
THE REASONABLE LEGAL FEES AND EXPENSES INCURRED BY
PLAINTIFF IN THE FILING OF HIS MOTION FOR SANCTIONS, DOC. #52,
AND PREPARATION FOR, ATTENDANCE AT AND PARTICIPATION IN THE
EVIDENTIARY HEARINGS OF AUGUST 26, 2022, AND SEPTEMBER 15,
2022. THE LEGAL FEES AND EXPENSES SHOULD BE ITEMIZED BY
INDIVIDUAL ENTRY INDICATING THE DATE, DETAILING THE LEGAL
MATTER INVOLVED AND STATING THE AMOUNT OF TIME BILLED

On December 21, 2022, the Court issued its Decision and Entry Overruling

in Part and Deferring in Part Plaintiff's Rule 37 Motion for Sanctions, Doc. #52

("Decision and Entry"). Doc. #82. Plaintiff's motion was overruled pursuant to

Fed. R. Civ. P. 37(b)(2)(A), failure to obey a discovery order, and Rule 37(e)(2),

acting with intent to deprive another party of electronic stored information

("ESI"). A ruling pursuant to Rule 37(e)(1) was deferred. Defendant, Wright State University ("Wright State") was ordered to file a supplemental memorandum setting forth all emails produced and relevant to the three reasons stated in Dean Margaret Dunn's December 5, 2016, letter to Plaintiff Igor Elman ("Elman"), removing him as chair of the Department of Psychiatry of the Boonshoft School of Medicine at Wright State. Doc. #89. Plaintiff filed a response to Defendant's supplemental filing, Doc. #92, and Defendant filed a reply. Doc. #94. Plaintiff's Motion for Sanctions, Doc. #52, is ripe for decision.

## I. Procedural History Relevant to Plaintiff's Motion for Sanctions Pursuant to Rule 37(e)(1), Doc. #52.

Plaintiff's Complaint alleges that Wright State's removal of him as chair of the Department of Psychiatry and his March 2018 "constructive discharge" from the university was discriminatory based on race and national origin and that he was unlawfully retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. Doc. #1. The Complaint also asserts a claim of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq*., and state law claims of breach of contract, fraudulent inducement and constructive discharge. *Id*.

On October 5, 2021, Elman filed a Motion for Sanctions, Doc. #52, and in Defendant's response, Doc. #57, it was disclosed that Wright State had failed to preserve email accounts of Plaintiff and his administrative assistant, Beth Huber

("Huber"). Thereafter, the parties engaged in a discovery conference with the Court, agreed to a stay of discovery and participated in an unsuccessful Court-conducted mediation. Doc. ##60, 63 and 64.

On August 26, 2022, and September 12, 2022, evidentiary hearings were held on Plaintiff's Motion for Sanctions, Doc. #52, and on December 21, 2022, the Court issued its Decision and Entry. Doc. #82. The Decision and Entry found that Fed. R. Civ. P. 37(e), "Failure to Preserve Electronically Stored Information" ("ESI") was satisfied. Specifically, the Court found that (1) the email accounts of Plaintiff and Huber should have been preserved in anticipation of litigation; (2) Wright State failed to take reasonable steps to preserve the information; and (3) as a result of Wright State's actions, the information was lost and could not be restored or replaced by discovery. Doc. #82, PageID##830-831 and 834-836. For sanctions to be awarded under Rule 37(e)(1), however, the Court must first find "prejudice to another party from loss of information." *Id*. Only after a finding of prejudice is a Court permitted to "order measures no greater than necessary to cure the prejudice." *Id*.

Although Elman testified at the hearings that he was prejudiced by the deletion of his and Huber's email accounts, Wright State argued that no prejudice existed and that Elman's claims were mere speculation. Based on the evidence at the hearings, and the filings of Elman and Wright State, Doc. ##52, 57, 58, 77, 78, 79 and 80, the Court deferred ruling on Plaintiff's Motion for Sanctions pursuant to

Fed. R. Civ. P. 37(e)(1)[1] for failing to preserve the email accounts of Plaintiff and his administrative assistant. Doc. #82, PageID##836-837. To assist the Court in its determination of whether Plaintiff was prejudiced, Wright State was ordered to file a supplemental memorandum that identified each email provided to Plaintiff in discovery and to explain "how each is relevant to any one or more or all of the three reasons stated by Dean [Margaret] Dunn[2] in her December 5, 2016," letter to Plaintiff removing him as chair of the Department of Psychiatry. Doc. #82, PageID#838. The reasons listed in Dean Dunn's letter to Elman were his alleged failure to demonstrate the ability to (1) "effectively communicate with faculty and learners;" (2) "constructively accept feedback;" and (3) work with faculty and learners since "the majority are trying to actively avoid contact" with him. Exhibit 31.

## II. Standard of Review

Pursuant to Rule 37(e)(1), no party assumes the "burden of proving or disproving prejudice" and the Court must evaluate "the information's importance in the litigation." Rule 37(e) advisory committee's note to 2015 amendment.

---

[1] Rule 37(e), entitled "Failure to Preserve Electronically Stored Information" ("ESI"), permits a Court to award sanctions if "such information that should have been preserved in the anticipation or conduct of litigation is lost because a party fails to take reasonable steps to preserve it and it cannot be restored or replaced through additional discovery. . ."

[2] Margaret Dunn was Dean of the Boonshoft School of Medicine at Wright State University from February 3, 2015, to June 30, 2020.

Accordingly, [T]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id*.

Although considerable discretion exists and "serious measures," may be necessary to cure the prejudice, Rule 37(e)(1) states a Court may not order measures greater than necessary to cure the prejudice and the Court is not required to cure "every possible prejudicial effect." *Id*. A Court must be careful not to award sanctions permitted only upon a finding of intent pursuant to Rule 37(e)(2),[3] which would include "striking pleadings related to, or precluding a party from offering any evidence in support of the central or only claim or defense in the case." *Id*. However, excluding "a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence" might be appropriate. *Id*. (emphasis added).

**II. Analysis**

Wright State's supplemental memorandum lists 15 different emails from January 13, 2016, through November 16, 2016, that it argues support one or more of the three reasons given by Dean Dunn in her December 5, 2016, letter to Plaintiff. Doc. #89, PageID##2489-2490. Defendant's filing explains the emails,

---

[3] Rule 37(e)(2) states that upon a finding that "a party acted with the intent to deprive another party of the information's use in the litigation," a Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

four of which included Plaintiff as either an author or recipient, and their relevance to Dean Dunn's three reasons for Plaintiff's removal. It further asserted that emails to or from Plaintiff or to or from Huber to others at Wright State were not deleted and if requested by Plaintiff in discovery were or could be produced by to him. To prove this point, Defendant also attaches an appendix listing 109 emails produced in discovery to Elman, 10 of which were also included in the 15 emails pertaining to the December 5, 2016, letter. Defendant argues that Plaintiff's assertion that he has been prejudiced by the loss of emails he sent to Huber and to outside scholars "are not informative of [Dean Dunn's] good faith reasons" for removing him as Department Chair. Doc. #89, PageID#2495.

In his response to the supplemental memorandum, Plaintiff argued that although he testified that he sent approximately three to four emails per hour to Huber, none of these emails were produced and as a result he is prejudiced. Doc. #92. His filing fails to explain how he is prejudiced by not having emails he sent to or received from Huber or how he is prejudiced by not having the emails she sent to him or to other individuals both inside and outside the university. He provides no details as to what these deleted emails may have concerned other than to assert "[Y]ou name it, continuous medical education, research." *Id.*, PageID#2511. Elam's response also fails to request a specific sanction.

Although not cited by Plaintiff in his response, Doc. #92, the Court has reviewed his testimony from the August 26, 2022, evidentiary hearing to better

understand Plaintiff's contention that he was prejudiced by the loss of his and
Huber's emails.

At the hearing, Plaintiff testified that "most of my communications with
faculty as well as other people went through [Huber]." Aug. 22, 2022, Transcript,
p. 91. These communications included "promotions, career development,
working on joint research projects [and] strategic planning." *Id.* Concerning
Defendant's argument that communications with Wright State faculty are
available and if requested were produced, Elman responded that not all of the
communications were produced, the emails he sent to others may have been
deleted, *id.*, p. 118, and that his communications included communications with
faculty in other departments other than the medical school's Department of
Psychiatry. *Id.*, p.92. As for communications with "learners,"[4] Elman testified that
Huber was coordinating all his interactions with them.

> Every medical student that wanted to apply and go into
> psychiatric residency, whether it would be at Wright State or
> elsewhere, approached me for a letter of recommendation. It wasn't
> cookie-cutter letter, it was -- previously they got standard letters. I
> wrote personalized letter for every medical student that approached
> me and expressed a desire and sort of commitment to get trained to
> do -- to apply for residency training in psychiatry.
> There were also students that were interested in research
> projects, so sort of doing some academic works, as well,
> communicating with them quite actively, and it was usually done
> through Beth to schedule meetings and need some follow-up. If, for
> example, I recommend . . . a learner to read some literature, I just

---

[4] Learners were defined by Plaintiff as "students, predoctoral students, medical students,
postdoctoral students, residents and fellows." *Id.* at pp. 92-93.

> say, by the way, we published paper in such-and-such year, Beth would go and identify this paper and make sure they have it.

*Id.*, pp. 93-94.

Plaintiff further testified that when a student was interested in a research project, he would instruct Huber to give the "learner" specific literature on a subject that might be helpful to them and schedule a follow-up meeting with him and the learner.[5] *Id.*, p. 94. He testified that "people sought contact with me and sought advice and help and involvement" and that the emails from him and Huber would have supported that interaction. *Id.*, p. 96.

Based on this testimony, the Court finds that Plaintiff is not prejudiced by not having his or Huber's email communication that was either sent to or received from faculty at Wright State's School of Medicine. Defendant's supplemental filing includes this email communication. If, as Elman argues, he communicated with and worked with faculty members in <u>other</u> departments at Wright State, this email should be made available if requested by him in discovery.[6] Accordingly, whether emails sent by or received from Plaintiff or his administrative assistant to Wright

---

[5] Plaintiff argues that his and Huber's calendars were also deleted and would show dates that Elman met with both faculty and learners. Because the alleged deletion of these two calendars is the subject of a separate motion, Motion for Sanctions Regarding Defendant's Wiping of Plaintiff's Desktop Computer and Memorandum, Doc. #81, the Court will not address this issue in this Decision and Order.

[6] Plaintiff's filings do not state if he has requested email communication sent by either Plaintiff or Huber to other non-medical school faculty at Wright State. Defendant's post-trial brief indicates that email from these individuals, assuming they have an active account or were on the litigation hold list, should still be available. Doc. #77, PageID#680; Doc. #94, PageID#2531.

State faculty show that Plaintiff failed to "effectively communicate with the faculty" or "work with faculty" is a question of fact for the jury to decide. The Court further notes that the discovery of these issues are not limited to email and can be further explored through deposition testimony of faculty members both in and outside the Wright State School of Medicine.

The Court does, however, find that Plaintiff is prejudiced by not having his or Huber's email communications that were sent to or received from the learners or to those individuals or entities to which Elman or Huber sent letters of recommendation or other information at the learner's request. The existence of this email communication would show whether Plaintiff was able to "effectively communicate" with learners and was sought out by them, as Elman testified or whether they were "actively avoiding contact" with Plaintiff as Dean Dunn asserted in her December 5, 2016, letter to Plaintiff.

Dean Dunn's other stated reason for Plaintiff's removal as chair of the Department of Psychiatry, his alleged failure to "constructively accept feedback," appears to be related to an issue concerning Plaintiff's willingness to participate in executive coaching. This issue was not addressed by Plaintiff in either his filings or at the evidentiary hearings and can be addressed, if necessary, through deposition discovery or testimony.

9

### III. Sanctions

For the reasons set forth above, the Court finds that Plaintiff is prejudiced by the loss of information in his and Huber's email account as it relates to his communication with learners, his work with them and Wright State's assertion that they "actively avoided contact" with him.  For these reasons, Wright State is precluded from submitting any evidence, either through testimony or documents, that relates, refers or pertains to Plaintiff's alleged failure to communicate effectively with learners, work with them or that the learners actively avoided contact with Plaintiff as reasons for his removal as chair of the Department of Psychiatry.

Additionally, Defendant's belated admission of its error in effectively implementing a litigation hold has not only delayed Plaintiff's prosecution of his case but has increased his costs in pursuing answers to discovery issues. Accordingly, counsel for Plaintiff is to submit to counsel for Defendant for payment an itemized list of reasonable legal fees and expenses incurred in the filing of its Motion for Sanctions, Doc. #52, and preparation for, attendance at and participation in the evidentiary hearings of August 26, 2022, and September 15, 2022.

## IV.     Conclusion

For the reasons set forth above, the Court SUSTAINS Plaintiff's Motion for Sanctions, Doc. #52, finding that Defendant violated Fed. R. Civ. P. 37(e)(1). The Court awards sanctions as follows:

(1) Wright State is precluded from submitting any evidence, either through testimony or documents, as a reason for the removal of Plaintiff as chair of the Department of Psychiatry, that relates, refers or pertains to his alleged failure to communicate, to work effectively with learners, and/or that the learners actively avoided contact with Plaintiff; and

(2) Wright State is to pay the reasonable legal fees and expenses incurred by Plaintiff in the filing of his Motion for Sanctions, Doc. #52, and preparation for, attendance at and participation in the evidentiary hearings of August 26, 2022, and September 15, 2022. The legal fees and expense should be itemized by individual entry indicating the date, detailing the legal matter involved and stating the amount of time billed.

## V.     Further Item

One other motion is pending: Plaintiff's Motion for Sanctions Regarding Defendant's Wiping of Plaintiff's Desktop Computer (Doc. #81). Hearings on said motion took place on June 15 and July 6, 2023. Simultaneous briefing will be

concluded on September 22nd of this year. The matter will then be taken under

advisement and a decision rendered.


Date: July 25, 2023

WALTER H. RICE
UNITED STATES DISTRICT JUDGE