IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| IGOR ELMAN, | : | |
| Plaintiff, | | Case No. 3:18-cv-358 |
| v. | : | Judge Walter H. Rice |
| WRIGHT STATE UNIV., | | |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING PLAINTIFF IGOR ELMAN'S RULE 37 MOTION FOR SANCTIONS REGARDING DEFENDANT WRIGHT STATE UNIVERSITY'S FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION IN NATIVE FORMAT (DOC. #115)

---

Before the Court is Plaintiff Igor Elman's Rule 37 Motion for Sanctions Regarding Defendant Wright State University's Failure to Preserve Electronically Stored Information ("ESI") in Native Format. (Third Motion, Doc. #115). For the reasons set forth below, the Third Motion is OVERRULED.

I.  **Factual Background and Procedural History**

The factual background has been set forth at length in other entries (*see, e.g.*, Decision and Entry, Doc. #82, PAGEID 823-31; First Entry, Doc. #97, PAGEID# 2545-47; Second Entry, Doc. #111, PAGEID 3110-21), and the Court incorporates those discussions by reference. In relevant part, and as discussed

previously, on December 5, 2016, Margaret M. Dunn, M.D., Dean of Defendant's Boonshoft School of Medicine ("BSOM"), informed Plaintiff via letter that he was being removed as Chair of the BSOM Department of Psychiatry. (Pl. Ex. 31, Doc. #81-2, PAGEID 802). In the letter, Dean Dunn stated that Plaintiff was being removed due to "his inability to (1) communicate effectively with faculty and learners, (2) 'constructively accept feedback' and (3) work with faculty and learners, since 'the majority are trying to actively avoid contact' with him." (Doc. #82, PAGEID 823 (citation omitted)). Plaintiff filed a complaint with the Equal Employment Opportunity Commission, and, on February 3, 2017, Mia Yaniko, Assistant General Counsel for Defendant, sent a memorandum entitled "Duty to Preserve Documents and Information[,]" *i.e.*, the "Litigation Hold." Among the recipients were Dean Dunn; Jerald Kay, M.D., Professor Emeritus of Psychiatry; Albert F. Painter, Jr., Psy. D., Associate Dean of Faculty Affairs for BSOM; and Julie P. Gentile, M.D., Interim Chair and Professor of Psychiatry.[1] (Doc. #81-1, PAGEID 798). Ms. Yaniko informed the recipients that:

> WSU is now under a legal duty to preserve all evidence, whether printed or electronic, that might become relevant to this matter. Some of this information may be in your possession or control, and WSU has a legal duty to preserve that information. The purpose of this letter is to explain to you what that obligation means. We will need your assistance in ensuring *nothing that may be relevant to this matter* is destroyed or lost regardless of ordinary retention schedules. Similarly, the WSU Office of General Counsel will need everything preserved that might be useful for WSU's interests as evidence in the matter.

---

[1] Positions are as of February 3, 2017.

2

. . .

You are required to take the following steps immediately to protect and preserve any of the above referenced information that is in your possession or under your control until further notice.  Specifically, you must do the following immediately:

1. Suspend deletion, overwriting, or any other destruction of any electronically stored information (ESI) relevant to this dispute that is under your control.  This includes ESI wherever it is stored on a server, at your work station, on a laptop or tablet, at home, on an external hard drive, on any kind of removable disk (e.g., CD, DVD or flash drive), on any handheld device (e.g, iPhone, Android, or Blackberry), or on any other kind of electronic information-storage device.  It includes all forms of electronic information (e.g., e-mail, word processing documents, spreadsheets, databases, calendars, phone logs, voicemail messages, internet usage files, videos, digital images, graphics, and photographs).  This ESI must be preserved so that it can be retrieved at a later time. *The information must be preserved in its original electronic form so that all information contained within it, whether visible or not, is also available for inspection.  It is not sufficient to simply make a hard copy of an electronic communication.*  The IT department may be asked to make an image of your personal network drive and departmental computer drive, and is being asked to preserve new emails and any attachments to those emails until further notice, irrespective of normal retention schedules and backup practices. *Your responsibility is for the information that is under your control.*

2. Similarly, preserve any new ESI that is generated after you receive this letter that may be relevant to this matter. [Note - see below — any future communications regarding this matter with individuals other than WSU's attorneys may be subject to production to other parties in discovery.]

3. Preserve any hard copies under your control that contain information relevant to this matter.

(Doc. #81-1 at PAGEID 798, 800 (emphasis added, brackets in original)).  While Molly J. Hall, M.D., Professor of Psychology, was not included in the Litigation Hold, there is no dispute that the hold extended to any correspondence with or

3

other documents involving Dr. Hall with respect to Plaintiff's employment dispute with Defendant.

Plaintiff filed suit on October 31, 2018, and subsequently propounded Requests for Production of Documents ("Rule 34 Requests"). It is undisputed that Defendants produced portable document format ("PDF") or hard copies of all five documents at issue in this Motion: (1) November 15, 2015, letter from Dr. Gentile; (2) August 4, 2016, notes taken by Dr. Painter; (3) File notes taken by Dean Dunn purporting to begin on August 19, 2016; (4) October 29, 2016, letter from Dr. Kay; and (5) Notes by Dr. Hall[2], purportedly taken on November 3, 2016 (collectively, "Documents"). (Doc. #115, PAGEID 3140-41). However, the Documents were never produced in native format.[3] Plaintiff claims that Defendant did not disclose this failure to Plaintiff until February 2024.

As discussed at length in the January 11, 2024, Second Entry, Defendant's failed litigation hold and wiping of Plaintiff and his administrative assistant's computers significantly prejudiced Plaintiff, specifically with respect to metadata:

---

[2] As discussed previously (Doc. #111, PAGEID 3118 n.2), the undersigned's law clerk is a private patient of Dr. Hall. However, neither Plaintiff's interactions and relationship with Dr. Hall, nor the contents of the document attributed to her, played any part in the Court's ruling.

[3] "Electronic documents have an associated file structure defined by the original creating application. This file structure is referred to as the *native format* of the document." *The Sedona Conference Glossary: E-Discovery and Digital Information Management*, 15 SEDONA CONF. J. 305, 341 (Fall 2014) (emphasis added) . Examples include .docx for Microsoft Word documents and .xlsx for Microsoft Excel documents.

Metadata is "[t]he generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file." *Id*. at 339. For example, the document creator's name is often preserved in the metadata of a Microsoft Word document, even if her name appears nowhere in the text of the document itself.

"Plaintiff is correct that the PDF versions of printed copies of emails and calendar entries do not substitute for receiving electronic materials in their native formats with metadata included." (Doc. #111, PAGEID 3125).  The Court imposed wide-ranging sanctions, including that:

> Defendant may not offer testimony or evidence, either in a motion for summary judgment or at trial, that the spoliated ESI was favorable to Defendant and/or unfavorable to Plaintiff, including but not limited to the reasons for removal of "Plaintiff's alleged failure to communicate effectively with learners, work with them or that the learners actively avoided contact with Plaintiff as reasons for his removal as chair of the Department of Psychiatry."

(*Id*. at PAGEID 3127, quoting Doc. #97, PAGEID 2553).  Plaintiff did not expressly seek to have the above-quoted language cover any perceived failures to work effectively with *faculty* until his Post-Hearing Briefing.[4]  (Doc. # 98, PAGEID 2578-79).  More importantly, Plaintiff never asked the Court to expand or modify the Second Entry so that it would extend to faculty interactions.

On March 7, 2024, Plaintiff filed the instant Third Motion, claiming that Defendant failed to preserve the Documents' native format and metadata.  "That failure is of pivotal significance because Elman has good reason to question the authenticity of each of those five documents because they contain anachronisms,

---

[4] Plaintiff, in that post-hearing brief, asked that the Court: "order that Wright State be prohibited from offering evidence, either through testimony or documents, as a reason for the removal of Plaintiff as chair of the Department of Psychiatry, that relates, refers, or pertains to their claims that:

1. Elman failed to work effectively with faculty;

2. that faculty actively avoided Elman, and;

3. that Elman failed to constructively accept feedback." (Doc. #98, PAGEID 2578-79)

5

the potential for undisclosed redactions, and WSU produced multiple versions of the same purported documents which reveal inconsistencies within the same document across iterations." (Doc. #115, PAGEID 3142). Plaintiff asserts that Defendant did not inform him of its failure to preserve until February 6, 2024. (*Id.* at PAGEID 3147). He seeks to bar Defendant from using information contained in the Documents to support its argument that Plaintiff's inability to communicate and work effectively with faculty was a cause of his removal as department chair; *i.e.*, "for sanctions to extend to *faculty* because such sanctions are 'necessary to cure the prejudice' as that term is used in Fed.R.Civ.P. 37(e)(1)." (*Id.* at PAGEID 3146 (emphasis in original)). He also "requests that this Court set an evidentiary hearing to determine the [other] sanctions which should be imposed arising from Defendant's failing to preserve in native format[.]" (*Id.* at PAGEID 3148).

Defendant counters that "the five documents at issue are all preserved, and were produced years ago in the litigation." (Memo. in Opp., Doc. #117, PAGEID 3161). Also, the metadata at issue were created before Plaintiff was removed as Chair and the litigation hold went into effect, meaning that if the metadata were erased in the normal course of business prior to February 2017, then Defendant did not actually spoliate anything, certainly not with intent or recklessness, as is required for sanctions under Rule 37(e). (*Id.* at PAGEID 3162; *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (for a party to be liable for spoliation under Rule 37(e)(2), "[a] showing of negligence or even gross negligence will not do the trick.")). Further, Defendant argues that it fulfilled its duty by

6

producing copies of the Documents in a usable format. (*Id.* at PAGEID 3162, citing FED.R.CIV.P. 34(b)(2)(E)(ii-iii)). Defendant further claims that Plaintiff's doubts as to whether the Documents produced are true and complete copies, and his argument "that metadata for documents already produced was necessary to prove that the documents already produced had not been altered[,]" are rank speculation bordering on "paranoia," which is not a basis for sanctions. (*Id.* at PAGEID 3170, citing *Pastin v. Allstate Ins. Co.*, No. 2:17-cv-1503, 2018 WL 10229727, *2 (W.D. Pa. Sept. 18, 2018) ("This Court will not require that Allstate redo a burdensome document production in metadata form, that may or may not be successful, and will be duplicative of what has already been produced in PDF format, solely to satisfy Plaintiffs' paranoia.")). Defendant argues that because Plaintiff has neither shown that Defendant willfully or recklessly spoliated evidence, nor that he was prejudiced, the Third Motion should be denied. (*Id.*, citing *Blasi v. United Debt Servs.*, No. 2:14-cv-83, 2020 WL 9597842, *3 (S.D. Ohio Jun. 24, 2020) (Vascura, Mag. J.)).

In the Reply, Plaintiff asserts that, contrary to Defendant's representation, the Documents at issue were available in native format as of March 2, 2023. (Reply, Doc. #120, PAGEID 3208, 3210, citing C.M. Curtin Expert Report, PAGEID 3237, 3249-50). He further argues that the fact that Defendant produced PDF versions of hard copy Documents is immaterial, since Rule 34 gives Plaintiff the right to request a specific format, and the parties agreed to native format production upon "a showing of particular need." (*Id.* at PAGEID 3212-13, quoting

7

Rule 26(f) Report, Doc. #7, PAGEID 45; citing *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 279 F.R.D. 447, 449 (S.D. Ohio 2012) (Frost, J.); *see also id.* at 3214-15, quoting *Equal Emp'ment Opp. Comm'n v. Gypsum Exp., L.T.D.*, 345 F.R.D. 442, 450 (E.D. Ky. 2024); *German v. Micro Elec., Inc.*, No. 2:12-cv-292, 2013 WL 143377, *9 (S.D. Ohio Jan. 11, 2013) (Preston Deavers, Mag. J.) (discussing holdings in Sixth Circuit district courts that a producing party is obligated to keep electronic documents in a usable format)). Plaintiff claims that the native format and accompanying metadata are necessary to verify the Documents' authenticity and to know when and how they were edited.  (*Id.* at PAGEID 3213, quoting *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 107-08 (E.D. Pa. 2010)).  He further argues that he has been prejudiced because "the inconsistencies and anachronisms in the documents suggest they were created after the fact and could not have been reviewed by Dr. Dunn at the time she made her decision to remove Dr. Elman."  (*Id.* at PAGE 3214).  Without the metadata and native format, Plaintiff asserts, he is unable to ascertain the veracity of the Documents and effectively cross-examine the authors about their motivations in seeking to have him removed as Chair.

The matter is now ripe for decision.

## II.     Law and Analysis

Plaintiff argues that "despite being warned by in-house counsel, Dean Dunn, Dr. Kay, Dr. Painter, and Dr. Gentile each individually failed to make reasonable efforts to preserve their notes and letters in their native format and Defendant

8

failed to make reasonable efforts to assure they did." (Doc. #115, PAGEID 3147, quoting Doc. 81-1, PAGEID 800).  However, the Third Motion was devoid of any correspondence or other documents detailing how Plaintiff allegedly came to know, on or about February 6, 2024, that Defendant had failed to preserve the native format and metadata of the Documents at issue. (*Id*.).  Rather, for the first time in his Reply, Plaintiff argues that: (1) the native formats of the Documents at issue were in existence and in Defendant's possession on March 2, 2023; and (2) nonetheless, the native formats were never produced. (Doc. #120, PAGEID 3208, citing C.M. Curtin Expert Report Doc. #120-4, PAGEID 3237).

   Defendant's March 2, 2023, production is subject to a Clawback Agreement, by which Plaintiff and Defendant agreed that "neither side will use the documents with Bates-stamps from the March 2, 2023 production, if those documents have been downloaded, saved or printed." (Agmt., Doc. #120-6, PAGEID 3371).  Thus, it is unclear why Plaintiff kept possession of that production, much less gave it to his expert for analysis.  More worrying to the Court is why Plaintiff waited until his Reply to level the serious, albeit implied, accusation that Defendant willfully misrepresented the time at which Defendant no longer had the native formats and metadata of the Documents; doing so leaves Defendant without an automatic opportunity to respond.  Even if the reason for Plaintiff's delay is innocuous—*i.e.*, not having his expert report ready at the time the Third Motion was filed—it may still be inappropriate for the Court's consideration: "it is well established that a moving party may not raise new issues

9

for the first time in its reply brief." *Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 889 (S.D. Ohio 2007) (Marbley, J.); *accord*: *Ross v. Am. Red Cross*, 567 F. App'x 296, 308 (6th Cir. 2014) ("[Appellant] makes this argument for the first time in her reply brief, and, therefore, we do not consider it.").

Nonetheless, the Court need not resolve the propriety of considering Plaintiff's argument, because it is immaterial to its ruling on the Motion. Even if the expert report showed that Defendant was reckless or willful in its failure to preserve the Documents in their native formats and their metadata, the Third Motion arises not under Rule 37(e)(2), which deals with willful or reckless conduct, but under Rule 37(e)(1), which deals with negligence. (Doc. #115, PAGEID 3145-46 (emphasis in original) ("[T]he newly revealed loss of the native format ESI of the five subject documents . . . underscores the need for sanctions to extend to *faculty* because such sanctions are 'necessary to cure the prejudice' as that term is used in FED.R.CIV.P. 37(e)(1).")). Rule 37(e)(1) allows the imposition of sanctions only *"upon finding prejudice* to another party from the loss of information," and the Court "may order *measures no greater than necessary to cure the prejudice.*" FED.R.CIV.P. 37(e)(1) (emphasis added). In other words, no new prejudice, no new sanction.

As discussed above, in the Second Entry, the Court addressed the precise prejudice Plaintiff suffered here: "Plaintiff is correct that the PDF versions of printed copies of emails and calendar entries do not substitute for receiving electronic materials in their native formats with metadata included." (Doc. #111,

PAGEID 3125). That prejudice includes the inability to evaluate authenticity, as referred to by Plaintiff in the Third Motion. (Doc. #115, PAGEID 3138). The Court imposed the significant sanctions (Doc. #111, PAGEID 3127) in part to cure the prejudice with respect to *all* documents that were not produced in native format—including, presumably, the Documents at issue here. Plaintiff has not shown that he has been prejudiced in a different manner or greater magnitude with respect to these particular Documents; absent additional prejudice, the Court cannot order additional sanctions. FED.R.CIV.P. 37(e)(1). Consequently, the Third Motion must be overruled.

    The Court briefly notes the relief sought by Plaintiff: to expand the Court's sanction in the Second Entry to bar Defendant from introducing "testimony or evidence that the spoliated ESI was unfavorable to Plaintiff as to the alleged failure to communicate effectively with *faculty*, work with *faculty*, that *faculty* actively avoided contact with Plaintiff, or that he was unable to accept feedback from *faculty* as reasons for his removal as Chair[.]" (Doc. #115, PAGEID 3145 (emphasis in original)). In light of this requested sanction, the Third Motion reads more as a motion to modify the Second Entry, rather than a motion for sanctions over a newly-unearthed set of discovery violations. If Plaintiff wishes to expand the sanctions in the Second Entry, then he should file a motion requesting such relief. But a Rule 37 motion is not the proper vehicle for doing so.

11

### III. Conclusion

For the foregoing reasons, Plaintiff's Third Motion for Sanctions (Doc. #115) is OVERRULED. Pursuant to this Court's previous Order (Doc. #121, PAGEID 3373), the parties shall file a Joint Proposed Scheduling Order no later than May 31, 2024.

IT IS SO ORDERED.

May 13, 2024

*Walter H. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT