IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| IGOR ELMAN, | : | |
| Plaintiff, | | Case No. 3:18-cv-358 |
| v. | : | Judge Walter H. Rice |
| WRIGHT STATE UNIV., | | Mag. Judge Peter B. Silvain, Jr. |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING PLAINTIFF IGOR ELMAN'S MOTION TO EXPAND THE SANCTIONS IN SECOND DECISION AND ENTRY (DOC. #128)

---

Before the Court is Plaintiff Igor Elman's Motion to Expand the Sanctions in the Second Decision and Entry. ("Expanded Second Motion," Doc. #128). For the reasons set forth below, the Expanded Second Motion is OVERRULED.

I. **Factual Background and Procedural History**

   A. **Document Dispute**

The factual background has been set forth at length elsewhere by the Court. (*See, e.g.*, Preliminary Entry, Doc. #82, PAGEID 823-31; First Entry, Doc. #97, PAGEID# 2545-47; Second Entry, Doc. #111, PAGEID 3110-21; Third Entry, Doc. #122, PAGEID 3375-82). In relevant part, Plaintiff is claiming that Defendant Wright State University ("WSU") spoliated the native formats and metadata of the following electronically stored information ("ESI"): (1) 2015 letter from Julie P.

Gentile, M.D., Interim Chair and Professor of Psychiatry[1] at Defendant's Boonshoft School of Medicine ("BSOM"), to Margaret M. Dunn, M.D., Dean of BSOM (a/k/a "Exhibit E" to report of Plaintiff's expert, C. Matthew Curtin); (2) August 4, 2016, notes from Albert F. Painter, Jr., Psy. D., Associate Dean of Faculty Affairs for BSOM (Exhibit H); (3) File notes taken by Dean Dunn purporting to begin on August 19, 2016 (Exhibit F); (4) August 29, 2016, letter from Jerald Kay, M.D., Professor Emeritus of Psychiatry, to Dean Dunn (Exhibit G); and (5) Cover email from and notes taken by Molly J. Hall, M.D.[2], Professor of Psychiatry, sent on or about November 3, 2016 (Exhibit B) (collectively, the "Five Documents"). (Doc. #122, PAGEID 3378).

On December 5, 2016, Dean Dunn removed Plaintiff as Chair of the BSOM Department of Psychiatry, giving as one reason for removal that Plaintiff could not effectively communicate with faculty. (Pl. Ex. 31, Doc. #81-2, PAGEID 802; Doc. #82, PAGEID 823 (citation omitted)). On February 3, 2017, Mia Yaniko, Assistant General Counsel for Defendant, sent a "Litigation Hold" to, among other recipients, Dean Dunn, and Drs. Gentile, Kay, and Painter. (Doc. #81-1, PAGEID 798). Ms. Yaniko informed the recipients that from that moment forward, they had to preserve "all evidence, whether printed or electronic, that might become relevant

---

[1] All positions are as of February 3, 2017.

[2] As discussed previously (Doc. #111, PAGEID 3118 n.2), the undersigned's law clerk is a private patient of Dr. Hall. However, neither Plaintiff's interactions and relationship with Dr. Hall, nor the contents of the documents attributed to her, played any part in the Court's ruling.

2

to this matter."[3] (*Id.*). Plaintiff filed suit on October 31, 2018, and subsequently propounded Requests for Production of Documents. It is undisputed that Defendants produced copies of the Five Documents in portable document format ("PDF"). However, Defendant failed to produce any of the Five Documents in native format.[4] (*Id.* at PAGEID 3147).

Upon learning of the lack of native formats, Plaintiff retained Charles M. Curtin as an expert and turned over to him two productions of documents by Defendant, the first from March 2, 2023, which were produced directly from Defendant's Everlaw database ("Production 1") and a March 29, 2023, reproduction of the same documents ("Production 2"), with alterations to address problems with the formatting of certain documents in Production 1. Curtin concluded that, despite Production 1 not having native formats of the Five Documents: (1) Exhibit B's source file was a Word document in Defendant's possession, (2) Exhibit E was not in Production 1 in any format, and (3) PDF copies of Exhibits F, G, and H were "manipulated" by Defendant Bates-stamping the pages, and the three Exhibits likely had Word document source files. (C.M. Curtin Report, Doc. #128-14, PAGEID 3607, 3608-11). Curtin opined that Defendant's failure to produce the native formats prevented Plaintiff from determining the authenticity of the documents. (*Id.* at PAGEID 3611-12).

---

[3] While Dr. Hall was not included in the Litigation Hold, there is no dispute that the hold extended to any correspondence with or other documents involving Dr. Hall with respect to Plaintiff's employment dispute with Defendant.

[4] (*See, e.g.*, Decision and Entry Doc. #122, PAGEID 3378 n.3 (definitions of metadata and native format)).

3

On March 6, 2024, Plaintiff filed the Third Motion, arguing that Defendant had spoliated the native formats of the Five Documents, and asked that Defendant be prevented from using the documents to show Plaintiff's purported difficulties interacting with BSOM faculty. (Doc. #115). The Court overruled that Motion, holding that Plaintiff had failed to show how he was prejudiced by any loss of the native formats of the Five Documents specifically. (Doc. #122, PAGEID 3384-85, citing Doc. # 111, PAGEID 3125, 3127). The Court concluded that "the Third Motion reads more as a motion to modify the Second Entry, rather than a motion for sanctions over a newly-unearthed set of discovery violations. If Plaintiff wishes to expand the sanctions in the Second Entry, then he should file a motion requesting such relief." (*Id*. at PAGEID 3385).

B.  **Expanded Second Motion**

On June 25, 2024, Plaintiff filed the Expanded Second Motion, arguing that Defendants failed to produce the Five Documents in native format despite Curtin concluding that the native formats existed at the time of Production 1 on March 2, 2023, and despite Defendant representing that it had produced many documents in native format as part of Productions 1 and 2. (Doc. #127, PAGEID 3407-08, 3413-14). Further, Plaintiff asserts, "over time[,] Defendant produced iterations of the same document[,] and some iterations of the same purported document contained noticeable differences." (*Id*. at PAGEID 3412). Plaintiff also argues, for the first time, that Defendant's failure extended to five emails that he believes

4

were used to send the Five Documents to Dean Dunn (collectively, the "New Documents"). (*Id*. at PAGEID 3416).

Plaintiff argues that Curtin's Report demonstrates that Defendant must have spoliated the native format of the Five Documents after the duty to preserve attached. (Doc. #128, PAGEID 3419-20, quoting Doc. #117, PAGIED 3170). Defendant's spoliation is particularly prejudicial, Plaintiff argues, because the native formats and metadata are necessary to assess the authenticity of the Five Documents, which are the only materials purportedly supporting Dean Dunn's contention that Plaintiff could not work well with faculty. (*Id*. at PAGEID 3423-24). Consequently, Plaintiff asks that the:

> Court bar Defendant from introducing any evidence, either through testimony or documents, that relates, refers, or pertains to Dr. Elman's alleged failure to communicate effectively with faculty, work with faculty or that the faculty actively avoided contact with Dr. Elman as reasons for his removal as chair of the Department of Psychiatry. Alternatively, Dr. Elman requests the Court bar Defendant from introducing any evidence, either through testimony or documents, that relates, refers, or pertains to the Documents.

(*Id*. at PAGEID 3425, citing FED.R.CIV.P. 37).

In its memorandum *contra*, Defendant notes that: the PDF copies of the Five Documents it produced are presumptively valid under the Federal Rules of Evidence and were authenticated by Dean Dunn. (Memo. in Opp., Doc. #135, PAGEID 3769-70, quoting FED.R.EVID. 1003; citing M. Dunn Decl., Doc. 117-1, PAGEID 3176-78). Thus, PDF production was sufficient, and it was not obligated under the Federal Rules to reproduce them in a different format later on. (*Id*. at PAGEID

3770, citing FED.R.CIV.P. 34(b)(2)(E)(iii)). Defendant argues, moreover, that the Expanded Second Motion exaggerates any failure by Defendant to preserve the native formats. Specifically, Exhibit B was turned over in Productions 1 and 2 as a PDF with metadata, but not in native format; upon being made aware of this, Defendant submitted Exhibit B in native format on June 6, 2024. (*Id.* at PAGEID 3773-74). Further, Defendant argues that Curtin's Report did not conclude that the native formats existed for Exhibits E, F, G, and H at the time of Production 1. Rather, the Report stated that Exhibit E was not in Production 1 or Production 2, and Exhibits F, G, and H were only produced in PDF. In sum, there is no evidence that Defendant was in possession of the native formats of Exhibits E, F, G, or H at the time of Production 1, or that it spoliated the native formats or metadata after the litigation hold was in place. (*Id.* at PAGEID 3774, citing Doc #128-14, PAGEID 3610-11).

Further, Defendant asserts that the five New Documents are not a basis for sanctions. (Doc. #133, PAGEID 3775, citing Doc. #128, PAGEID 3415-16). Defendant notes that, there is no evidence that Dean Dunn received Exhibits E, F, G, or H via email, and thus, no evidence that four of the supposed New Documents even exist. As to the fifth document, an email sent to Dean Dunn from Dr. Hall's Premier Health email account, Defendant states it could not have preserved the native format or metadata of that email because it did not originate from a WSU address. (*Id.*).

6

Defendant claims that the speculation offered by Plaintiff is not enough for sanctions under either subsection of Rule 37(e). (Doc. #135, PAGEID 3780, quoting *Pastin v. Allstate Ins. Co.*, No. 2:17-cv-1503, 2018 U.S. Dist. LEXIS 232791 *5 (W.D. Pa. Sept. 18, 2018)). As to Rule 37(e)(2), Defendant directs the Court to *Applebaum v. Target Corp.*, wherein the plaintiff sought an adverse inference instruction as a sanction with respect to allegedly spoliated ESI. The United States Court of Appeals for the Sixth Circuit affirmed the district court's denial of such an instruction, holding that "Rule 37(e)(2) required her to show that Target had 'intent' to deprive her of the information's use. 'A showing of negligence *or even gross negligence* will not do the trick.'" (*Id.* at PAGEID 3781 (emphasis added), quoting *Applebaum*, 831 F.3d 740, 745 (6th Cir. 2016)). Defendant argues that there is no evidence that Defendant willfully or recklessly destroyed any native formats or metadata, and thus, Plaintiff has not met the standard for sanctions under Rule 37(e)(2). (*Id.*).

Defendant argues that the Second Expanded Motion is just as unfounded under Rule 37(e)(1), in which Plaintiff must show prejudice from not having access to the ESI. Defendant asserts that, contrary to Plaintiff's contention, there were numerous other documents supporting Plaintiff's removal, including emails regarding executive coaching for Plaintiff and his challenges working with other members of the faculty. (Doc. #135, PAGEID 3776, citing Supp. Br., Doc. #89, 2490-94; Doc. #97, PAGEID 2552). Moreover, the native formats and metadata of the Five Documents are unimportant, as the documents' relevance comes not

7

from their contents—*i.e.*, the authors' states of mind—but only in how they influenced *Dean Dunn's* state of mind when she, and she alone, removed Plaintiff as chair. Thus, "[i]f the documents had gone through multiple drafts or were revised before they were provided to [Dean Dunn], it would have little relevance to her evaluation of the documents and the ultimate decision that Plaintiff challenges in this case." (Doc. #135, PAGEID 3788). Defendant opines that, in light of the minimal prejudice suffered by Plaintiff, his requested sanctions—barring any evidence of his supposed inability to communicate with faculty or of the subject matter of the Five Documents—are greater than that which is necessary to cure the prejudice, and thus cannot be implemented. (*Id.* at PAGEID 3787-88, citing FED.R.CIV.P. 37(e)(1)).

Plaintiff reiterates that Defendant's inability to provide the native formats prejudices him by "severely limiting Dr. Elman's ability to defend himself against Wright State's allegations that he failed to work effectively with faculty and to accept feedback constructively, and that the majority of faculty were trying to avoid him." (Reply, Doc. #138, PAGEID 3816-17). He argues that Defendant's implied position—that the native formats for the Five Documents were spoliated between their creation in late 2016 and the imposition of the litigation hold—suggests an "implausibly high degree of randomness." (*Id.* at PAGEID 3819). Plaintiff claims that Defendant's failure to produce the native formats violated the federal rules; even though the creation of the Five Documents preceded the litigation hold, Defendant was still obligated to preserve the native formats and

8

metadata of those documents, because it had them in its possession or control on the date the hold was enacted. (*Id*. at PAGEID 3822-23, quoting *German v. Micro Elec., Inc.*, No. 2:12-cv-292, 2013 U.S. Dist. LEXIS 4594, *24 (S.D. Ohio Jan. 11, 2013) (Preston Deavers, Mag. J.); citing FED.R.CIV.P. 26(f) Report, Doc. #7, PAGEID 45).

Plaintiff restates his argument that the authenticity of the Five Documents is best evaluated through examining the native formats and metadata themselves, and that deposing the documents' authors on authenticity is insufficient. (Doc. #138, PAGEID 3823-24, quoting *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 108 (E.D. Pa. 2010)). Most importantly, Plaintiff asserts prejudice because other documents produced and identified previously by Defendant do not "come close to providing rational, non-discriminatory grounds to summarily remove an esteemed chair of a department." In sum, Plaintiff claims, the Five Documents are the heart of Defendant's defense, and Plaintiff cannot reasonably be expected to rebut the claims contained therein without the chance to evaluate their metadata. (*Id*. at PAGEID 3826, citing Doc. #135, PAGEID 3775). This Court already held that Plaintiff was prejudiced by the lack of metadata with respect to Plaintiff and Beth Huber's Microsoft Outlook accounts; Plaintiff argues that it should draw a similar conclusion here, and extend sanctions to bar Defendant from using the Five Documents as evidence supporting Dean Dunn's decision. (*Id*. at PAGEID 3827, citing Doc. #111, PAGEID 3114, 3115, 3124).

The matter is now ripe for decision.

9

## II. Legal Standards

Federal Rule of Civil Procedure 37(e) was added to Rule 37 in 2015 to deal specifically with ESI and which "addressed the serious problems resulting from the continued exponential growth in the volume of such information." FED.R.CIV.P. 37(e) advisory committee's note to 2015 amendment. As such, it limited the harshest sanctions, such as default judgment, involuntary dismissal, or a mandatory adverse inference jury instruction, to instances when "the party acted with the intent to deprive another party of the information's use in the litigation[.]" FED.R.CIV.P. 37(e)(2). The Rule for instances of negligence provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court[,] upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

FED.R.CIV.P. 37(e)(1).

## III. Analysis

### A. Five Documents

#### 1. Rule 37(e)(2)

Plaintiff's allegations of spoliation with respect to the Five Documents are properly separated into three categories. *First*, Exhibit B, Dr. Hall's email to Dean Dunn, wherein she attached a Microsoft Word document of her impressions of Plaintiff, was not produced in native format until June 2024, despite, according to Plaintiff, Defendant representing to the Court repeatedly that the native format did not exist. (Doc. #128, PAGEID 3413 n.10). Notably absent from Plaintiff's claim

10

is any evidence that Defendant knew that it possessed, much less attempted to hide, the native format of Exhibit B. Indeed, there is no evidence that Defendant was aware that it ever had Exhibit B in native format until it received the first version of Curtin's Report on April 4, 2024. (*Id*. PAGEID 3418). Thus, any mishandling by Defendant of the native format and metadata with respect to Exhibit B was not intentional, and the Court may not sanction without a showing of prejudice. FED.R.CIV.P. 37(e)(2).

*Second*, Plaintiff asserts that Curtin concluded that Defendant possessed Exhibits F, G, and H in native format, but produced them only as PDFs. (Doc. #128, PAGEID 3420). Not so. Curtin stated that:

> [I]nstead of being found in email boxes in the form of document creation, we find them in the form of PDF.
>
> Even so, these are not produced in the form they were found. Visual verification of the document in the bottom-right corner of the pages shows Bates stamps. Addition of Bates stamps requires manipulation of the files, rather than production of true copies.
>
> I thus conclude that even where the documents were produced in PDF, they were not produced in native form.

(Doc. #128-14, PAGEID 3611). Thus, Curtin did not state that the native formats of Exhibits F, G, and H existed at the time of Production 1. Significantly, the addition of a Bates stamp to a PDF does not indicate that Defendant was in possession of any non-PDF versions of these documents—*i.e.*, there is no indication that what Defendant has produced to Plaintiff were not true and accurate copies of the final versions received by Dean Dunn. (Doc. #117-1, PAGEID 3177-78, ¶¶ 5-9).

11

*Finally*, Curtin concedes that Exhibit E was not in Production 1, and he argues that "[w]e are left with the question of how and from what sources the documents corresponding to Exhibit E were ingested (*sic*) into the system for production." (Doc. #128-14, PAGEID 3610). Plaintiff, armed with nothing more than speculation with respect to a document it has received multiple times in PDF, asks Defendant to prove that the Exhibit E metadata and native format were *not* spoliated after the litigation hold. Mere speculation is not enough for the Court to require Defendant to prove a negative. As Plaintiff has not shown willful spoliation by Defendant, the Court may not sanction Defendant under Rule 37(e)(2).

### 2.    Rule 37(e)(1)

Plaintiff also has no basis for relief under Rule 37(e)(1), as the differences between the Five Documents on Plaintiff's work computer and entries on Outlook calendars underscore why Plaintiff did not suffer prejudice. The documents that were completely lost "include[d] Plaintiff's 2016 Annual Performance Review and minutes of faculty meetings chaired by Plaintiff, copies of which were likely stored on Plaintiff or Ms. Huber's wiped computers." (Doc. #111, PAGEID 3125). The prejudice to Plaintiff from not having copies of these documents *at all* was readily apparent: "If these documents exist, then they would be highly probative as to two of the three proffered reasons for his removal as chair: whether Plaintiff worked effectively with faculty, and/or whether faculty avoided him." (*Id.* at PAGEID 3124-25). In that instance, Defendant's spoliation greatly limited Plaintiff's ability to prove his case.

12

However, as stated above, PDF copies of the Five Documents have been repeatedly produced. Plaintiff has had PDF copies of Exhibit B for years, and he received the native format and metadata almost one year prior to trial. Plaintiff does not claim that he lacked adequate time to evaluate the materials and form his rebuttal to Defendant's use of the exhibit. Unlike with his work computer documents, Plaintiff can evaluate the final copies of Exhibits E, F, G, and H. Importantly, the metadata and native formats of these documents have little probative value. Drs. Gentile, Hall, Kay, and Painter had no direct say in the decision to remove Plaintiff as chair, meaning that these documents would not be offered for the truth of the matters asserted therein. Rather, they could only be offered for the impressions, if any, they made upon Dean Dunn's mental state in making *her* decision to remove Plaintiff. Thus, any changes from earlier to final versions of these documents that might be in the native formats and metadata are of minimal relevance. While Plaintiff is correct that information need not be admissible evidence to be discoverable (Doc. #138, PAGEID 3821, quoting FED.R.CIV.P. 26(b)(1)), there is no reason why he could not probe the authors about any earlier drafts of the Five Documents via deposition. In sum, Plaintiff is not hindered in his ability to prosecute his case by not having the native formats and metadata. In the absence of any prejudice, sanctions are not available under Rule 37(e)(1), and the Motion must be overruled as to the Five Documents.

**B. New Documents**

As discussed above, for the first time in the Expanded Second Motion, Plaintiff claims that Defendant spoliated emails that purportedly transmitted the Five Documents to Dean Dunn. (Doc. #128, PAGEID 3416). However, there is only a record of one email even existing—a November 3, 2016, email from Dr. Hall to Dean Dunn, which included Dr. Hall's notes with respect to Plaintiff. (*Id.*). As Defendant notes, that email was sent from Dr. Hall's Premier Health email account, and Defendant would have had no way to preserve the native format or metadata from that account. (Doc. #135, PAGEID 3775; *see also* Doc. #128-14, PAGEID 3665 (showing sender email address with a PremierHealth.com domain)). As to the other purported emails, Plaintiff has not shown evidence of their existence, much less their spoliation. Thus, there has been no discovery violation, and the Motion must be overruled as to the New Documents as well.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Expanded Second Motion for Sanctions (Doc. #128) is OVERRULED.

IT IS SO ORDERED.

September 26, 2024

*Walter H. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

14