IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

IGOR ELMAN,                              :

     Plaintiff,                          Case No. 3:18-cv-358

     v.                              :    Judge Walter H. Rice

WRIGHT STATE UNIV.,                           Mag. Judge Peter B. Silvain, Jr.

     Defendant.                          :

---

ORDER FINDING THAT DEFENDANT WRIGHT STATE UNIVERSITY
SHOWED GOOD CAUSE PURSUANT TO THIS COURT'S ORDER
(DOC. #161) AS TO WHY THE COURT SHOULD NOT IMPOSE
SANCTIONS FOR DEFENDANT'S FAILURE TO UPDATE ITS INITIAL
DISCLOSURES WITH RESPECT TO JERALD KAY, M.D., LEAVING
DEFENDANT'S EMPLOY, OVERRULING WITHOUT PREJUDICE
PLAINTIFF IGOR ELMAN'S FOURTH MOTION FOR SANCTIONS (DOC.
#145), AND SUSTAINING IN PART AND OVERRULING IN PART
PLAINTIFF'S SECOND EXPANDED MOTION FOR SANCTIONS (DOC.
#164); PLAINTIFF'S ATTORNEY SHALL FILE AN APPLICATION FOR
COSTS AND ATTORNEY FEES WITH A LODESTAR CALCULATION
AS TO SECOND EXPANDED MOTION ONLY WITHIN TWENTY-ONE
(21) DAYS OF ENTRY; DEFENDANT MAY RESPOND WITHIN
FOURTEEN (14) DAYS THEREAFTER; FURTHER SANCTIONS
DETAILED HEREIN

---

Before the Court are Plaintiff Igor Elman's Motion for Sanctions for Failure to

Supplement Initial Disclosures ("Fourth Motion," Doc. #145), the Court's Order to

Defendant Wright State University ("WSU") to Show Cause as to why the Fourth

Motion should not be sustained ("OSC," Doc. #161), Plaintiff's Response to the

OSC ("OSC Response," Doc. #162), and Plaintiff's Motion to Expand the

Sanctions in Second Decision and Entry ("Second Expanded Motion," Doc. #164). For the reasons set forth below, the Court finds that Defendant HAS SHOWN good cause for its failure to supplement its Initial Disclosures to notify Plaintiff that its fact witness, Jerald Kay, M.D., was no longer employed by Defendant and, in fact, had suffered a significant health impairment that left him unable to communicate (and died shortly thereafter)—specifically, that the failure to supplement was harmless.  Consequently, the Court OVERRULES the Fourth Motion.  The Court further SUSTAINS IN PART AND OVERRULES IN PART the Second Expanded Motion.

## I.     Factual Background and Procedural History

The parties' discovery disputes have been the subject of numerous motions and Court Orders (*see, e.g.*, Docs. #91, 97, 111, 122, 158), and the Court incorporates its previous discussions, findings, and conclusions by reference.  On or about June 12, 2019, Defendant, in its Initial Disclosures, stated that Dr. Kay, Professor Emeritus of Psychiatry at Defendant's Boonshoft School of Medicine ("BSOM"), was being represented by Defendant's counsel and could only be contacted through said counsel.  (FED.R.CIV.P. 26(a)(1); Defendant's Init Disc., Doc. #145-3, PAGEID 3898, ¶ 7).  Dr. Kay subsequently left Defendant's employ and died on or about October 27, 2024, but Defendant did not supplement the Initial Disclosures to reflect those changes.  (Doc. #161, PAGEID 3981).

On or about September 11, 2024, Plaintiff's counsel contacted Defendant's attorneys, attempting to notice the depositions of Margaret M. Dunn, M.D., BSOM

2

Dean; Julia A. Gentile, Professor and Chair of the Department of Psychiatry; Molly
J. Hall, M.D., Professor of Psychiatry; Alfred F. Painter, Jr., Psy.D., Associate
Dean of Faculty Affairs for BSOM; and Dr. Kay.  Defendant arranged deposition
dates for Dean Dunn and Dr. Gentile, but stated that Drs. Hall and Kay were no
longer employed by Defendant.  (Doc. #161, PAGEID 3981).  On or about
September 24, 2024, Defendant provided Plaintiff with the most recent known
addresses of Drs. Hall and Kay that it had on file, but could not vouch for their
accuracy.  Additionally, Defendant informed Plaintiff "that Dr. Kay had a significant
health incident this past summer, and is not able to verbally communicate."  (Sept.
20, 2024, Email, Doc. #145-2, PAGEID 3895).

Plaintiff filed the Fourth Motion, claiming "that Defendant, by failing to
correct its initial disclosures to include the updated employment status and contact
information [for] Dr. Kay, violated its duty to supplement its Initial Disclosures."
(Doc. #161, PAGEID 3982, citing Fed.R.Civ.P. 26(a, e); Doc. #145, PAGEID
3884).  The Court surmised that "the fact that Dr. Kay was no longer employed by
Defendant, and could not be contacted through Defendant's counsel, is a 'material'
change that required Defendant to correct its initial disclosures."  (*Id.* at PAGEID
3983, citing Fed.R.Civ.P. 26(e)(1)(A); *Biltrite Corp. v. World Road Markings, Inc.*,
202 F.R.D. 359, 362 (D. Mass. 2001)).  The Court also concluded that
Defendant's failure to supplement likely prejudiced Plaintiff, since he could no
longer depose Dr. Kay.  (*Id.* at PAGEID 3984).  In light of the above and the dictate
of Federal Rule of Civil Procedure 37 that sanctions for failure to supplement are

mandatory unless the failure was substantially justified or harmless, the Court ordered Defendant to show cause as to why the Fourth Motion should not be sustained. (*Id.* at PAGEID 3983, 3984-85, citing FED.R.CIV.P. 37(c)(1)).

In its Response, Defendant argues that because Dr. Kay was already on emeritus status at the time of initial disclosures, and thus, "[h]is status never changed in a material way during the proceedings of this case; it was only his health and his unfortunate death that has made him unavailable as a witness in the case, not any delay in supplementation of contact information." (Doc. #162, PAGEID 3986). Rather, Defendant claims, it was only in September 2024, shortly after Plaintiff sought to notice Dr. Kay's deposition, that Defendant found out that Dr. Kay had suffered a debilitating health incident and was unable to testify. (*Id.* at PAGEID 3987).

Defendant asserts that the decisions cited by the Court in its OSC were inapposite, as those involved either a witness using a fictional name or where the plaintiff identified two individuals as company employees, despite neither being employed by the plaintiff at the time of initial disclosures. (Doc. #162, PAGEID 3988, citing *Biltrite Corp.*, 202 F.R.D. at 361-62; *Agilisys Inc. v Hall,* No. 1:16-cv-3557, 2019 U.S. Dist. LEXIS 135570, *38-39 (N.D. Ga. May 29, 2019)). Here, Dr. Kay's status as a retired professor, which was disclosed to Plaintiff in 2019, never materially changed. Moreover, Defendant argues, discovery was ongoing when the updated contact information was given, meaning Plaintiff had the ability to subpoena Dr. Kay with the updated information for deposition. Defendant notes

4

that courts have been less likely to find violations of the duty to supplement when discovery is ongoing, and argues that the Court should similarly decline to sanction it in this instance. (*Id.* at PAGEID 3988-89, citing *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795-96 (E.D. Tenn. 2016), *aff'd* 899 F.3d 428 (6th Cir. 2018); *Nugent v. Spectrum Juv. Just. Servs.*, No. 21-12741, 2024 U.S. Dist. LEXIS 164519 at *16-17 (E.D. Mich. Sept. 12, 2024)). Finally, Defendant claims that Plaintiff naming Dr. Kay as a witness in *Plaintiff's* initial disclosures makes any failure to supplement harmless, since Plaintiff recognized Dr. Kay's importance from the start. (*Id.* at PAGEID 3989-90, citing *Jackson v. Herrington*, No. 4:05-cv-186-JHM, 2011 U.S. Dist. LEXIS 49503 at *6-8 (W.D. Ky. May 6, 2011); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, No. 1:07-cv-598, 2009 U.S. Dist. LEXIS 36704 at *8 (W.D. Mich. Apr. 30, 2009)).

In the Second Expanded Motion, Plaintiff notes that Dr. Gentile testified in her deposition that she had transcribed some of her handwritten notes regarding Plaintiff into Word documents on her old personal laptop, but that she had not preserved those notes pursuant to the Litigation Hold, as "she did not believe it applied to her computer." (Doc. #164, PAGEID 3994, 3995-96, ¶¶ 11-14, 19-21, quoting Litig. Hold, Doc. #81-1, PAGEID 800; citing Doc. #81-1, PAGEID 798; J. Gentile Depo., Doc. #166-1, PAGEID 4021, 4022, 4030, 4039-40). Plaintiff argues that, despite Dr. Gentile's November 2021 declaration that she had not destroyed or "overseen the destruction of any documents related to Dr. Elman[,]" (*id.* at PAGEID 3996, quoting J. Gentile Decl., Doc. #57-6, PAGEID 352, ¶ 6 ), Dr.

5

Gentile was in possession of her old personal laptop as late as 2022, but did not produce the responsive documents stored on that laptop in any format, much less the requested native format.  (*Id*.).  Consequently, "Plaintiff requests the Court order that Defendant not use or refer to Dr. Gentile's notes."  (*Id*.).

Defendant counters that the Second Expanded Motion is nothing more than a rehashing of Plaintiff's previous motion with respect to spoliation of native formats, which this Court overruled on relevance grounds.  Dr. Gentile was not involved in Dean Dunn's decision to remove Plaintiff, and she had memorialized her thoughts regarding Plaintiff in a November 2016 memorandum to Dean Dunn, the final version of which was produced to Plaintiff in discovery.  Thus, to the extent those thoughts were in her memorandum, they are relevant only as to their impact upon Dean Dunn; to the extent those thoughts were not in her memorandum, they are not relevant at all.  (Memo. in Opp., Doc. #167, PAGEID 4108-09, citing Decision and Entry, Doc. #142, PAGEID 3874).  In this case, Defendant argues, even if she had documents on her personal laptop regarding Plaintiff, they have no probative value, and, thus, there should be no sanction for spoliation.  (*Id*. at PAGEID 4109).

In Reply, Plaintiff asserts that Dr. Gentile "intentionally permitted the destruction of the laptop used to create and repeatedly edit notes for over a year, which were then provided to Dean Dunn."  (Doc. #171, PAGEID 4119).  Plaintiff bases that assertion on the contradiction between the spoliation of Dr. Gentile's laptop and her previous sworn statement that she had never destroyed any

6

responsive documents. (*Id.* at PAGEID 4120). Plaintiff argues that Dr. Gentile's November 2016 memorandum was one of only four documents upon which Dean Dunn relied in deciding to remove Plaintiff, meaning Dr. Gentile's impressions, memorialized in the spoliated notes, have a relevance that has only now become apparent—they were Dr. Gentile's bases for her memorandum, which was in turn one of the main bases for removing Plaintiff. (*Id.*, quoting Doc. #142, PAGEID 3874). He claims the facts that Dr. Gentile sometimes shared her notes with Dr. Painter, Dean Dunn's "right-hand person," and that she regularly edited those notes prior to submitting them to Dean Dunn demonstrate the importance of the metadata, native formats, and earlier versions of the notes that no longer exist. (*Id.* at PAGEID 4120-21). Finally, Plaintiff asserts that the earlier versions of Dr. Gentile's notes are consistent with Dr. Gentile's testimony that Dean Dunn had targeted Plaintiff for removal in late 2015—more than one year prior to his official removal in December 2016. (*Id.* at PAGEID 4121-22, citing M. Dunn. Decl., Doc. #117-1, PAGEID 3176-77, ¶ 4; Doc. #166-1, PAGEID 4019; Perf. Review, Doc. #171-1, PAGEID 4126-28).

The matters are now ripe for decision.

## II. Legal Standards

### A. Supplementing Initial Disclosures

Rule 26 requires a party, shortly after the Rule 26(f) conference, to provide the opposing party with "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the

7

subjects of that information—that the disclosing party may use to support its

claims or defenses, unless the use would be solely for impeachment." FED.R.CIV.P.

26(a)(1)(A)(i).  The disclosing party need not provide the contact information for a

"party witness" (*e.g.*, an employee of an entity that is being sued) and may instead

direct the opposing party to contact those witnesses through counsel. *See, e.g.,*

*Torres v. Wells Fargo Bank, N.A.*, No. CV 17-9305, 2019 WL 7169790, *11 (C.D.

Cal. Sept. 27, 2019); *United States v. Malik*, No. 15-cv-9092, 2017 WL 264544,

*7 (D. Kan. Jan. 20, 2017) (upholding statements that employees must be

"contacted through counsel" as sufficient to comply with Rule 26(a)).  A party has

an affirmative obligation to update its disclosures:

> A party who has made a disclosure under Rule 26(a) . . . must
> supplement or correct its disclosure or response in a timely manner if
> the party learns that in some material respect the disclosure or
> response is incomplete or incorrect, and if the additional or corrective
> information has not otherwise been made known to the other parties
> during the discovery process or in writing[.]

FED.R.CIV.P. 26(e)(1)(A).

Failure to disclose or supplement a disclosure can subject a party to

sanctions: "If a party fails to provide information or identify a witness as required

by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless." FED.R.CIV.P. 37(c)(1).  "Rule . . . 37(c)(1)

requires absolute compliance with Rule 26(a), that is, it mandates that a trial court

punish a party for discovery violations in connection with Rule 26 unless the

violation was harmless or is substantially justified." *Roberts ex rel. Johnson v.*

*Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir.2003) (internal quotation marks and citation omitted). The following factors are considered as to whether an omission is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015), quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-797 (4th Cir. 2014).

### B.    Spoliation

Federal Rule of Civil Procedure 37(e) was added to Rule 37 in 2015 to deal specifically with ESI and which "addressed the serious problems resulting from the continued exponential growth in the volume of such information." FED.R.CIV.P. 37(e) advisory committee's note to 2015 amendment. As such, it limited the harshest sanctions, such as default judgment, involuntary dismissal, or a mandatory adverse inference jury instruction, to instances when "the party acted with the intent to deprive another party of the information's use in the litigation[.]" FED.R.CIV.P. 37(e)(2). The Rule for instances of negligence provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court[,] upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice.

FED.R.CIV.P. 37(e)(1).

9

## III.    Analysis

### A.    Supplementing Initial Disclosures

Defendant argues that its failure to supplement was substantially justified because "it was only clear to defense counsel that Dr. Kay's appearance could not be arranged by agreement when the actual attempt to schedule depositions began in September 2024." (Doc. #162, PAGEID 3987). Defendant appears to be referring to its counsel's September 12, 2024, email to Plaintiff's counsel, stating that Dr. Kay was "also not an employee of the University, and I am not able to arrange for his appearance by agreement." (Doc. #145-1, PAGEID 3893). Plaintiff had been operating under the valid assumption that, when the time came to notice Dr. Kay's deposition, his counsel could—and indeed, had to—contact Dr. Kay through Defendant's counsel.

While Defendant notes that discovery was ongoing at the time that its counsel disclosed that he could not arrange Dr. Kay's deposition, and that courts are more likely to assess sanctions for failure to supplement when discovery has closed versus being ongoing (Doc. #162, PAGEID 3989), that distinction is not meaningful in this case. As Defendant's counsel conceded, Dr. Kay was physically unable to testify even after Plaintiff's counsel made a timely request for deposition, and Defendant's counsel was not even sure that its most recent address for Dr. Kay was current. (Doc. #145-2, PAGEID 3895). Even with discovery open, there was no way for Plaintiff to mitigate his inability to depose Dr. Kay. Given *Howe* factor number two, Plaintiff's inability to cure the surprise of Dr. Kay's

10

unavailability, and factor number five, the insufficient explanation by Defendant for the failure to supplement, *Howe*, 801 F.3d at 748, the Court cannot conclude that the failure was substantially justified.

However, Defendant's argument that its failure to supplement was harmless (Doc. #162, PAGEID 3989-90) is persuasive.  Plaintiff recognized Dr. Kay's importance from the outset of the case.  As Defendant emphasizes, Dr. Kay was identified as a material witness in *Plaintiff*'s initial disclosures, and courts have been reluctant to find a failure to supplement prejudicial when the witness and his importance were known early in the case.  (*Id.*, quoting *El Camino Res., Ltd. v. Huntington Nat'l Bank*, No. 1:07-cv-598, 2009 U.S. Dist. LEXIS 36704, * 8 (W.D. Mich. Apr. 30, 2009); citing *Jackson v. Herrington*, No. 4:05-cv-186-JHM, 2011 U.S. Dist. LEXIS 49503, *6-8 (W.D. Ky. May 6, 2011)).  Plaintiff offers no argument, much less evidence, that he sought to depose Dr. Kay at any time between Plaintiff's initial disclosure of Dr. Kay as a witness in June 2019 and the initial email in September 2024, by which time Dr. Kay was incapacitated.  Nor did Plaintiff show that he otherwise detrimentally relied upon Defendant's representation that Dr. Kay needed to be contacted by counsel.  Thus, the first *Howe* factor—surprise to Plaintiff—weighs in favor of harmlessness.

Two of the remaining *Howe* factors—"(3) the extent to which allowing the evidence would disrupt the trial; [and] (4) the importance of the evidence[,]" *Howe*, 801 F.3d at 748 —also weigh in favor of harmlessness.  Plaintiff cannot offer testimony of Dr. Kay with respect to Plaintiff's removal as Chair.  However,

11

as to (1) any conversations that Dean Dunn had with Dr. Kay about Plaintiff, and (2) the impact that any of Dr. Kay's written materials had on Dean Dunn in deciding to remove Plaintiff, Dean Dunn was always going to be allowed to testify as to those non-hearsay statements, since they would be offered for the recipient's (Dean Dunn) state of mind, not for the truth of the matters asserted. FED.R.EVID. 801. While Plaintiff is unable to examine Dr. Kay as to any statements that he made regarding Plaintiff that he did not convey to Dean Dunn, such statements have little, if any, probative value, since Dr. Kay was not involved in the decision to remove Plaintiff. To the extent Plaintiff believes that Defendant is attempting to offer any statements by Dr. Kay for the truth of the matters asserted, such questions are properly resolved through motions *in limine* and at trial. The Court declines to handcuff the testimony or presentation of evidence with respect to a witness—Dean Dunn—who was properly made available for deposition. Similarly, the Court cannot determine whether the adverse inference instruction proposed by Plaintiff is proportionate to the harm caused by Dr. Kay's lack of availability in light of the evidence that will be presented. Plaintiff may renew his request for an adverse instruction at the charging conference.

The Court concludes that Defendant has shown good cause by demonstrating that its failure to supplement with respect to Dr. Kay was harmless. FED.R.CIV.P. 37(C)(1). Consequently, Defendant's Fourth Motion is OVERRULED without prejudice to renewal as discussed above.

12

**B.      Spoliation**

Plaintiff focuses on Dr. Gentile's supposed intentionality in spoliating documents on her personal laptop.  (Doc. #171, PAGEID 4122).  The focus is appropriate; for the Court to impose a sanction "greater than necessary to cure the prejudice," FED.R.CIV.P. 37(e)(1), the Court must "find[] that the party acted with the intent to deprive another party of the information's use in the litigation." FED.R.CIV.P. 37(e)(2).  "A showing of negligence *or even gross negligence* will not do the trick."  *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (emphasis added).  Defendant does not argue that Dr. Gentile's decision to keep work documents on her personal laptop and failure to preserve those documents when she got rid of the laptop was anything less than grossly negligent; nor could it reasonably do so.  Indeed, Dr. Gentile's spoliation is the latest in a series of failures by Defendant to preserve relevant documents, despite the presence of a comprehensive litigation hold that predated the filing of the instant lawsuit by more than twenty months.  (Doc. #81-1, PAGEID 798).  Given Defendant's gross negligence, and Plaintiff having to file a motion to bring that negligence to the Court's attention, the Court taxes Defendant with the costs and reasonable attorney fees incurred by Plaintiff in bringing the Second Expanded Motion.  *See, e.g., B&P Littleford, LLC v. Prescott Mach., LLC*, Nos. 20-1449, 1451, 2021 WL 3732313, *9 (6th Cir. Aug. 24, 2021) (Court may assess costs and attorney fees as part of its "broad discretion regarding discovery and trial matters[.]").

13

However, with respect to other sanctions under Rule 37(e), the question facing the Court is not the extent of Defendant's negligence, which borders on inexplicable, but Dr. Gentile's subjective intent in not preserving the documents. The only evidence offered by Defendant in support of intentional destruction is the incongruity between Dr. Gentile's sworn statement that she had never destroyed relevant documents and the subsequent spoliation. However, Dr. Gentile's declaration was filed with the Court on November 2, 2021 (Doc. #57-6, PAGEID 351), whereas the destruction of laptop documents did not occur until 2022. (Doc. #171, PAGEID 4120). Moreover, the Court's review of Dr. Gentile's deposition in relevant part (Doc. #166-1, PAGEID 4039-41) leads it to conclude that the failure to preserve documents on her personal laptop was a subjectively honest—albeit objectively baffling—misunderstanding of the scope of the litigation hold. Contrary to Plaintiff's argument that "Dr. Gentile did not prove that the loss of the device she had used to memorialize the edited notes Dean Dunn had quietly ordered her to make was not 'intentional[,]'" (Doc. #171, PAGEID 4122), neither Dr. Gentile nor any other individual associated with Defendant is required to prove such a negative. Rather, the absence of any positive evidence of subjective intent to deprive Plaintiff means that relief under Rule 37(e)(2) is unavailable.

As discussed above, relief for negligent spoliation of ESI is limited to "measures no greater than necessary to cure the prejudice[.]" FED.R.CIV.P. 37(e)(1). Plaintiff appears to argue that the notes that Dr. Gentile took on her personal laptop with respect to Plaintiff were part of a clandestine attempt by Dean

14

Dunn to gather negative information, while misleading Plaintiff with positive performance reviews. (Doc. #171, PAGEID 4121-22, citing M. Dunn Decl., Doc. #117-1, PAGEID 3176, ¶ 4; Doc. #166-1, PAGEID 4019). Plaintiff further argues that Dr. Gentile's process—initially putting her impressions of Dr. Elman on Post-It notes, then transcribing those notes into a Word document, and finally periodically editing the document before conveying her impressions to Dean Dunn—imbues the document and its metadata with newfound materiality; without them, Plaintiff is unable "to assess potential alterations, losses, and overall reliability of evidence." (*Id.* at PAGEID 4121).

The Court agrees that, to the extent that the notes on Dr. Gentile's laptop were provided to Dean Dunn apart from the memorandum that Dr. Gentile wrote, Plaintiff's inability to examine earlier versions of those notes and the document's metadata would render Plaintiff unable to evaluate any statements contained in the document. Thus, Dr. Gentile is barred from testifying about her process for taking notes on Dr. Elman or the contents of those notes, except to the extent that they appeared in her memorandum to Dean Dunn. Plaintiff may, of course, solicit testimony on that topic if he thinks it advantageous. Plaintiff may also examine Dr. Gentile on her failure to comply with the Litigation Hold.

However, Dr. Gentile may still testify as to the contents of the notes to the extent that they appeared in her final memorandum to Dean Dunn. Moreover, if Dean Dunn has any recollection of the notes or discussions with Dr. Gentile prior to the latter submitting her final memorandum, she may testify to that as well.

15

The Court will allow such testimony because the contents of the notes are not relevant for the truth of the matters asserted, but for how they influenced Dean Dunn's mental state in deciding to remove Plaintiff as chair. The Court is still not persuaded that this evidence has any probative value beyond its influence upon Dean Dunn's state of mind, since Dr. Gentile was not involved in the decision to remove Plaintiff. As Plaintiff has not demonstrated any additional prejudice, the Court cannot impose any further remedy.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Fourth Motion is OVERRULED WITHOUT PREJUDICE to renewal to the extent set forth above. Plaintiff's Second Expanded Motion is SUSTAINED IN PART AND OVERRULED IN PART. Plaintiff may file an application for reasonable costs and attorney fees associated with bringing the Second Expanded Motion, with an accompanying lodestar calculation, within twenty-one days of Entry. Plaintiff shall indicate on the face of the filing whether the fee application is opposed; failure to do so may result in the application being overruled with prejudice to refiling.

As sanctions for the Second Expanded Motion, the Court concludes that Defendant negligently failed to preserve the ESI on Dr. Gentile's computer, specifically the notes that Dr. Gentile took regarding Plaintiff, prior to submitting her final memorandum to Dean Dunn. Defendant is barred from introducing testimony regarding the notes, including but not limited to Dr. Gentile's thought process in compiling and editing the notes. However, Dr. Gentile, Dean Dunn, and

16

any other witness who may have participated in conversations regarding Plaintiff may testify as to their recollections of those conversations, and Dean Dunn may testify to her recollection of the notes and memorandum, to the extent they influenced her state of mind in deciding to remove Plaintiff.

      IT IS SO ORDERED.

_Walter H. Rice_
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

March 10, 2025